IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil No. 1:19CV328 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| $11,520.00 in U.S. CURRENCY, | : | |
| Defendant. | : | |

## VERIFIED COMPLAINT OF FORFEITURE

NOW COMES the plaintiff, United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and respectfully states as follows:

1. This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of the defendant property, which was furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, or represents proceeds traceable to such an exchange.

2. This action is also brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of the aforesaid defendant property which constitutes or is derived from proceeds traceable to an offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense, specifically the exchange of a controlled substance in violation of state and federal law.

3. The defendant property is $11,520.00 in U.S. Currency, which was seized on August 22, 2018, in Yadkin County, North Carolina, and is currently in the custody of the United States Marshals Service.

4. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395, because the defendant property was seized while located in the jurisdiction of this Court, or one or more of the acts giving rise to forfeiture occurred in this district.

6. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7. The facts and circumstances supporting the seizure and forfeiture of the defendant property are contained in **Exhibit A**, attached hereto and wholly incorporated herein by reference.

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

This the 25th day of March, 2019.

Respectfully submitted,

MATTHEW G.T. MARTIN
United States Attorney


/s/ Lynne P. Klauer
Lynne P. Klauer
Assistant United States Attorney
NCSB #13815
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
Phone: (336) 333-5351
Email: lynne.klauer@usdoj.gov

- 3 -

# VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America, that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

_____
Alfred Cortes
Special Agent
Drug Enforcement Administration

# DECLARATION

I, Alfred Cortes, Special Agent with the Drug Enforcement Administration (DEA), Greensboro, North Carolina, hereby state, pursuant to 28 U.S.C. § 1746, under penalty of perjury and pursuant to the laws of the United States, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. In 2000, I became a State Trooper with the Maryland State Police. I have been a Special Agent with DEA since 2008, and I am currently assigned to the DEA, Atlanta Field Division, Greensboro Resident Office. Prior to 2017, I was assigned to the Miami Divisional Office and the Jacksonville District Office with the Miami Field Division from 2008 to 2017. I have attended numerous training courses and investigations courses relating to drug trafficking. I have participated in investigations as either the lead case agent or co-case agent involving cocaine hydrochloride (HCI), cocaine base (crack), marijuana, methamphetamine, heroin, and various other controlled substances.

2. This declaration is submitted in support of a Verified Complaint of Forfeiture for $11,520.00 in U.S. currency seized on August 22, 2018, from Joshua Renee CASTRO.

3. Based on the investigation described below, there is probable cause to believe the $11,520.00 in U.S. currency is subject to forfeiture pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981.

4. The facts and circumstances set forth in this Declaration are based upon information provided by other law enforcement officers and my own personal knowledge and experience. Since this declaration is being submitted for a limited purpose, I am not including all the facts and information which I have learned about or obtained during the course of this investigation.

5. On August 22, 2018, at approximately 11:15 a.m., North Carolina State Highway Patrol Trooper Sean Davidson was on preventative patrol on I-77 in Yadkin County, North Carolina. While performing preventative patrol, Trooper Davidson's attention was drawn to a white Acura TL with tinted windows traveling southbound in the left lane. The Acura was not displaying a registration plate. The Acura merged from the left lane to the right lane with only a car length between a tractor-trailer, causing the tractor-trailer to decrease speed. Trooper Davidson merged behind the Acura to conduct a vehicle stop for the violations. Trooper Davidson activated his blue lights and siren, and the Acura yielded and pulled to the right of the emergency lane.

6. Trooper Davidson exited his patrol vehicle, approached the Acura on the passenger's side, and made contact with the driver. The driver asked Trooper Davidson if he had stopped him for the registration plate. Trooper Davidson explained to the driver the reason he stopped him was for the vehicle not displaying a registration plate and the unsafe movement when he merged in front of the tractor-trailer. The driver advised Trooper Davidson that he had a paper tag taped to the back window and he had just bought the vehicle in Michigan. Trooper Davidson looked and did see a paper thirty-day (30) tag half way taped to the back window. The other half of the tag was hanging down. Trooper

Davidson noted the back window was tinted so dark he could not see the paper thirty-day (30) tag from the rear as he approached the vehicle. The driver handed Trooper Davidson a Florida driver's license identifying him as Joshua Renee CASTRO of Largo, Florida. Trooper Davidson explained to CASTRO that if the information were valid he would issue him a warning. Trooper Davidson asked CASTRO to sit in his patrol vehicle. CASTRO asked if he could smoke a cigarette. Trooper Davidson advised he could not smoke in his patrol vehicle.

7. Once CASTRO came back to Trooper Davidson's patrol vehicle, Trooper Davidson asked if CASTRO had any weapons on his person. CASTRO stated he did not. CASTRO consented to a weapons search. Trooper Davidson did not find any weapons. CASTRO took a seat in Trooper Davidson's patrol vehicle, but did not close the passenger door. Trooper Davidson noticed that Trooper T.J. Clapp had pulled behind his patrol vehicle to assist in the stop.

8. Trooper Davidson engaged in casual conversation while checking CASTRO's information. Trooper Davidson asked where he was coming from. CASTRO stated he had been in Ohio for about a week visiting family. Trooper Davidson asked what he did for a living. CASTRO stated he did landscaping and cut hair on the side. CASTRO told Trooper Davidson he left Ohio at three o'clock that morning. As the conversation progressed, Trooper Davidson noticed CASTRO was breathing at an elevated rate and his head was moving back and forth by looking straight and over at Trooper Davidson. CASTRO began to yawn and touch his face while talking with Trooper Davidson. CASTRO stated he flew up to Ohio and then unexpectedly drove to Michigan and bought

- 3 -

the Acura he was driving. CASTRO at one point started moving his feet in the floorboard and even dropped his head for a second. CASTRO gave Trooper Davidson the vehicle invoice. The invoice stated "AN" as the buyer of the Acura. CASTRO stated he did not know "AN."

9. At this time, Trooper Davidson returned the vehicle information and gave the warning ticket to CASTRO. As CASTRO began to exit the patrol vehicle, Trooper Davidson asked if he could ask him some questions. CASTRO stated he could. Trooper Davidson asked if he knew "AN." CASTRO stated he did not. CASTRO stated he was not a terrorist. He was Puerto Rican. Trooper Davidson asked CASTRO what day he flew from Florida. CASTRO paused and stated he flew on Friday. Trooper Davidson asked CASTRO if he had smoked any marijuana in the vehicle. CASTRO stated he only smoked cigarettes. CASTRO told Trooper Davidson he could check the vehicle and even get his dog. Trooper Davidson asked if any marijuana, cocaine, heroin, and methamphetamine was in the vehicle. CASTRO stated "no, nothing at all," and said he could use the dog. Trooper Davidson asked if there were any large sums of U.S. currency in the vehicle. CASTRO stated, "nope, nope" while looking at the Acura. CASTRO stated he just had money he has with him and his credit card. Trooper Davidson asked if there were any aftermarket compartments in the vehicle. CASTRO stated "no." Trooper Davidson asked CASTRO if he could search the vehicle. CASTRO stated, "go ahead." CASTRO read and signed the consent form to search. As Trooper Davidson exited his patrol vehicle, he noticed CASTRO sit up in the patrol vehicle and drop his head again.

- 4 -

Case 1:19-cv-00328   Document 1-1   Filed 03/25/19   Page 4 of 8

10. Trooper Davidson exited his patrol vehicle to do a safety scan around the Acura and ground prior to Canine Dexter's search. At this time, Trooper Clapp stayed with CASTRO on the right passenger door while Trooper Davidson retrieved Canine Dexter. Canine Dexter was given the command to find it at the front left center of the Acura. On the detail pass, Canine Dexter sniffed with great intent on the driver's door. He continued to work around the vehicle. Once at the passenger's door, Canine Dexter was put into the interior of the vehicle. Canine Dexter alerted to the presence of the odor of narcotics on the center console by closing his mouth, began sniffing at a faster rate, and sticking his nose in the center console storage area. Canine Dexter then sat on the front right side passenger's seat in final response with his ears perked up looking at Trooper Davidson.

11. Trooper Davidson secured Canine Dexter back in his patrol vehicle. Trooper Davidson informed CASTRO that Canine Dexter alerted to the presence of the odor of narcotics in the center console. Trooper Davidson asked CASTRO if he had anything in the vehicle. CASTRO stated the he had smoked marijuana, but had not smoked since leaving Ohio. CASTRO stated he had placed the marijuana in the center console.

12. Trooper Davidson went back to the Acura do a hand search beginning on the right side of the front passenger's area. A small bundle of U.S. currency was found on the center console armrest near where Canine Dexter alerted. CASTRO told Trooper Clapp it was $700.00. Trooper Davidson continued his hand search and found a brown paper bag shoved above the plastic molding just above the brake pedal. Inside the brown paper bag was a large bundle of U.S. currency. CASTRO told Trooper Davidson there was about $12,000.00 in the bag. CASTRO stated he sold a vehicle and it was his cash. Trooper

Davidson asked why it was in a paper bag shoved under the dash. CASTRO responded, "it was a bag he had." Trooper Davidson contacted Sergeant J.S. Wooten and made him aware of the stop and findings. Sergeant Wooten advised Trooper Davidson to contact Trooper R.G. Reavis. Trooper Reavis advised Trooper Davidson to seize the U.S. currency. CASTRO was asked once more how much was in the paper bag. This time CASTRO stated $12,000.00, or a little more. CASTRO stated $2,000.00 more.

13. Trooper Davidson returned to his patrol vehicle and contacted the El Paso Intelligence Center (EPIC). CASTRO was arrested on August 29, 2013, in Cleveland, Ohio with three drug possession charges and two charges of trafficking. CASTRO plead guilty to a lesser offense to one charge of trafficking, and plead to a lesser charge for one charge of possession. The remaining charges were dismissed. Trooper Clapp counted the U.S. currency and advised the amount to be $11,000.00 in the paper bag. The U.S. currency found on the center console armrest totaled $520.00. Trooper Davidson finished the hand search of the vehicle with nothing else found. Trooper Davidson advised CASTRO that the money was being seized under the authority of the Drug Enforcement Administration. CASTRO stated he understood. Trooper Davidson gave CASTRO a receipt for the seized U.S. currency and released him.

14. Trooper Sean Davidson is a sworn law enforcement officer with the North Carolina State Highway Patrol since June of 2014. Trooper Davidson is assigned to the North Carolina State Highway Patrol's Central Interdiction Unit. His duties include the deterrence and prevention of violations of traffic and criminal laws. Trooper Davidson has made numerous drug arrests. Trooper Davidson has also received multiple training hours

in numerous Interdiction and Canine training courses. In March of 2017, Trooper Davidson was assigned as a K-9 Handler for the North Carolina State Highway Patrol. Trooper Davidson has received over thirteen (13) weeks of Basic Canine Handler School and in the deployment of a police canine and the use of a narcotics detection canine. Trooper Davidson demonstrated the ability to properly deploy and maintain a police canine. Trooper Davidson effectively used this training to locate concealed controlled substances (marijuana, hashish, heroin, powder and crack cocaine, methamphetamine, and MDMA). Trooper Davidson and Canine Dexter are currently certified by the Virginia State Police in locating the above listed controlled substances.

15. Canine Dexter is a four (4) year old German Shepherd, a breed specifically selected for their keen senses and ability to be trained to detect the odor of controlled substances. Canine Dexter has proven to be reliable in using his olfactory senses to locate narcotics training aids of actual controlled substances listed above. Canine Dexter is trained to the odor of cocaine, heroin, ecstasy, marijuana, and methamphetamine.

16. The U.S. currency was seized and taken to the North Carolina Highway Patrol's Criminal Interdiction Office in Winston-Salem, North Carolina, and placed in evidence.

17. Canine Dexter completed a secondary sniff at the Winston-Salem Criminal Interdiction Office. The U.S. currency was placed in an envelope and then placed in the second position of four (4) in a row of envelopes. Trooper Davidson gave Canine Dexter the command to find it. Canine Dexter alerted on the second envelope by giving a head

- 7 -

Case 1:19-cv-00328   Document 1-1   Filed 03/25/19   Page 7 of 8

snap, closed his mouth, began sniffing at a faster rate, and stuck his nose in the second envelope.

18. State Employee's Credit Union (SECU) conducted an official count of the U.S. currency, and separate checks for $11,000.00 and $520.00 were prepared. The U.S. Marshal's Service has custody of the $11,520.00 in U.S. currency.

19. DEA adopted the seizure of the $11,520.00 in U.S. currency and began administrative forfeiture proceedings. Notice of the forfeiture proceeding was posted on the internet at www.forfeiture.gov for a period of thirty days commencing on October 8, 2018 and ending on November 6, 2018. On December 28, 2018, DEA received a claim to the defendant property from CASTRO. Because a claim was filed, the administrative process was terminated and the seizure was referred to the U.S. Attorney's Office for judicial forfeiture.

CONCLUSION

20. Based upon the foregoing, I am of the opinion that there is probable cause to believe that the $11,520.00 in U.S. currency was furnished or intended to be furnished in exchange for a controlled substance, or represents proceeds traceable to such an exchange, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

_____
Alfred Cortes
Special Agent
Drug Enforcement Administration